■ WILLIAM BOULTON, as Parent and Natural Guardian of WILLIAM BOULTON, JR., an Infant, Appellant, v ABRAHAM FUCHSBERG et al., Respondents.—In an action to recover damages for legal malpractice, the plaintiff appeals from an order of the Supreme Court, Nassau County (Morrison, J.), dated December 15, 1989, which granted the defendants' motion to vacate their default in answering, and to compel the plaintiff to accept their answer.

Ordered that the order is reversed, on the law, and as a matter of discretion, with costs, the motion is denied, and the

matter is remitted to the Supreme Court, Nassau County, for an inquest as to damages and entry of a default judgment in the plaintiff's favor.

On June 19, 1977, William Boulton, Jr., was born with severe brain damage sustained allegedly as a result of negligent medical treatment his mother received at the hands of several different doctors. In March 1981 the child's father retained the law firm of Fuchsberg & Fuchsberg, a defendant in this legal malpractice action, to prosecute an action sounding in medical malpractice on behalf of the infant plaintiff.

The prosecution of the medical malpractice action was fraught with irregularities. Four of the defendant doctors asserted the affirmative defense of improper service of process in their answers. Fuchsberg & Fuchsberg, however, never sought a hearing on those affirmative defenses, notwithstanding numerous notations inside and outside the office file which indicated its awareness that the defense of lack of personal jurisdiction had been raised. Fuchsberg & Fuchsberg entered into a stipulation discontinuing the action against one of the doctors without a court order, despite the infancy of the injured plaintiff.

In April 1983 Fuchsberg & Fuchsberg deposed, as a non-party witness, a doctor who was named in the caption but had not yet been served. Although that doctor was subsequently served with process on February 8, 1984, he never answered. The 10-year Statute of Limitations expired on the plaintiff's cause of action in June 1987. Despite correspondence with that doctor's attorneys in September and December 1987, in which it was pointed out that he had never appeared in the action, Fuchsberg & Fuchsberg did not move for leave to enter a default judgment against him.

In March 1988 the plaintiff substituted the law firm of Shapiro & Baines for Fuchsberg & Fuchsberg upon the advice of the attorney who had originally referred him to Fuchsberg & Fuchsberg. Shapiro & Baines settled the medical malpractice case with the sole defendant doctor who had not raised an affirmative defense of lack of personal jurisdiction, for a structured sum with a present value of $1,200,000, and a cost of approximately $600,000. There was a total of $4,000,000 in insurance held by the doctor against whom no default judgment was entered and by three of the defendants who had asserted affirmative defenses of improper service.

Fuchsberg & Fuchsberg thereafter moved for a share of the legal fees in the medical malpractice action, and Shapiro &

Baines opposed the motion on the ground that their predecessors had been discharged for cause and that any fees accruing for any portion of the work performed by Fuchsberg & Fuchsberg should be paid to the infant plaintiff.

In August 1989 the plaintiff commenced the instant action against Fuchsberg & Fuchsberg charging, in general terms, that Fuchsberg & Fuchsberg's negligent handling of the medical malpractice action between May 1981 and March 1988 resulted in the plaintiff's inability to recover "the full amount of money damages from the responsible and liable parties to compensate * * * for the losses incurred". The plaintiff sought $10,000,000 in compensation.

After the plaintiff's counsel granted the defendants two extensions of time to answer the straightforward, three-page complaint in this action, he warned them that no further extensions would be granted, and that any answer served after October 19, 1989, would be rejected as untimely. On October 23, 1989, the plaintiffs received the defendants' four-page answer, in an envelope postmarked October 20, 1989, on the defendants' own postal meter. The plaintiff's attorney rejected the answer, and the defendants moved to vacate any alleged default in answering and, in effect, to compel the plaintiff to accept their answer.

Although the defendants claimed that their firm advanced the date stamp on the office postage meter to the following day each afternoon so that the answer, ostensibly posted on October 20, 1989, was actually sent out on the afternoon of October 19, 1989, the record contains no affidavit attesting that this was an established office practice or procedure.

Under the circumstances, it must be concluded that the answer was mailed on October 20, 1989, which was one day beyond the ultimatum set by the plaintiffs' counsel (cf., Nassau Ins. Co. v Murray, 46 NY2d 828; Glen Travel Plaza v Anderson Equip. Corp., 122 AD2d 327, 328; Engel v Lichterman, 95 AD2d 536, affd 62 NY2d 943).

Given the history of this case, we further conclude that the Supreme Court improvidently exercised its discretion in vacating the defendants' default in the absence of any reasonable excuse for their delay (see, Montalvo v Nel Taxi Corp., 114 AD2d 494, 495). Thompson, J. P., Kunzeman, Eiber, Rosenblatt and Ritter, JJ., concur.